UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:19-cv-649

| MARTIN LAFON INGRAM, | ) |
|---|---|
| Plaintiff, | ) |
| v. | ) ORDER |
| ANDREW M. SAUL,<br>**Commissioner of Social Security,** | ) |
| Defendant. | ) |

**THIS MATTER** is before the Court upon the Plaintiff's Motion for Summary Judgment (Doc. No. 11) and the Commissioner's Motion for Summary Judgment (Doc. No. 13). Having carefully considered such motions and reviewed the pleadings, the Court enters the following findings, conclusions, and Order.

**FINDINGS AND CONCLUSIONS**

**I.      Administrative History**

Plaintiff Martin Lafon Ingram filed his application for a period of disability and disability insurance benefits on January 19, 2016, alleging a disability onset date of January 15, 2015. After Plaintiff's claim was denied both initially and on reconsideration, he requested and was granted a hearing before an Administrative Law Judge ("the ALJ"). The ALJ issued a decision on November 8, 2018, finding that Plaintiff was not disabled, from which Plaintiff appealed to the Appeals Council. The Appeals Council denied review making the ALJ's decision the final decision of the Commissioner of Social Security ("Commissioner").

Thereafter, Plaintiff timely filed this action, seeking judicial review of the ALJ's

1

decision.

## II. Factual Background

At the first step in his decision, the ALJ determined that Plaintiff had not engaged in substantial gainful activity during the period from his alleged onset date through his date last insured. (Tr. 17). At the second step, the ALJ concluded that Plaintiff has the following severe impairments: status post remote motor vehicle accident with inflamed lumbar spine; post-traumatic stress disorder ("PTSD"); bipolar disorder; attention-deficit hyperactivity disorder (ADHD); anxiety; and remote history substance use. (Tr. 18). At the third step, the ALJ found that the Plaintiff did not have an impairment or combination of impairments that meet or medically equal the severity of one the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. (*Id.*).

The ALJ then found that Plaintiff has the residual functional capacity ("RFC") to perform light work,

> except that he had to avoid concentrated exposure to hazards, and could not lift more than 25 pounds overhead. The claimant could only perform unskilled work with simple, routine, repetitive tasks. He could have only occasional interaction with the public, supervisors, or coworkers. He was able to stay on task for two hours at a time throughout the workday. The claimant could perform no complex decision-making, could not work in crises, and could not have a constant change in routine.

(Tr. 19).

Based on these limitations, the ALJ found in the fourth step that Plaintiff was not capable of performing his past relevant work. (Tr. 22). At the fifth step, the ALJ concluded that there are other jobs that exist in significant numbers in the national economy that Plaintiff can perform. (Tr. 22-23). Accordingly, the ALJ found that Plaintiff was not disabled under the Act. (Tr. 23).

**III. Standard of Review**

The only issues on review are whether the Commissioner applied the correct legal standards and whether the Commissioner's decision is supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Review by a federal court is not de novo, *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986); rather, inquiry is limited to whether there was "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *Richardson*, 402 U.S. at 400. Even if the undersigned were to find that a preponderance of the evidence weighed against the Commissioner's decision, the Commissioner's decision would have to be affirmed if supported by substantial evidence. *Hays*, 907 F.2d at 1456.

**IV. Discussion**

Plaintiff's first assignment of error is that the ALJ rejected the opinions of all of his treating mental health providers without providing legally sufficient reasons for doing so.

A treating physician is a physician who has observed the plaintiff's condition over a prolonged period of time. *Mitchell v. Schweiker*, 699 F.2d 185, 187 (4th Cir. 1983). Under Social Security regulations applicable herein, an ALJ "is required to give 'controlling weight' to opinions proffered by a claimant's treating physicians so long as the opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record." *Lewis v. Berryhill*, 858 F.3d 858, 867 (4th Cir. 2017) (quoting 20 C.F.R. § 404.1527(c)(2)) (alterations in original). "The regulation's treating physician rule accords the greatest weight—controlling weight—to the opinions of treating sources, because those 'sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may

3

bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations.'" *Brown v. Comm'r Soc. Sec. Admin.*, 873 F.3d 251, 268 (4th Cir. 2017) (quoting 20 C.F.R. § 404.1527(c)(2)).

When denying an application for disability:

> [T]he notice of the determination or decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.

Soc. Sec. Ruling 96-2p, 1996 WL 374188, at *5. An ALJ is to assess the following factors in weighing a treating source's opinion: length of treatment relationship, nature and extent of treatment relationship, supportability of the opinion, consistency with the record as a whole, specialization of the source, and other relevant factors. 20 C.F.R. §§ 404.1527(c)(2–6).

In *Fox v. Colvin*, 632 Fed. Appx. 750, 756 (4th Cir. 2015), the ALJ gave less weight to a treating physician's opinion because the ALJ believed the limitations he assessed were "not well supported by the medical record." The Fourth Circuit found that such a "cursory and conclusory analysis" did not provide any reason, let alone a "good reason," why the ALJ concluded that the treating physician's opinion was inconsistent with other medical findings. *Id.*

The Plaintiff's treating mental health providers, Dr. Reger, Dr. Humphrey, and Anne Bowers, all opined that Plaintiff's mental impairments preclude sustained work activity. The treatment records from these providers appear to support their assessments.

In June 2016, Lance Reger, MD, Ingram's psychiatrist, indicated that he had treated Ingram monthly since 2009, primarily for medication management. He had last seen him on June 7, 2016. Dr. Reger stated that Ingram also saw Anne Bowers, LCSW for addiction counseling and psychotherapy. He said that Ingram suffers long-standing depression, anxiety, attention-

4

deficit, hyperactivity disorder (ADHD), and drug addiction. His diagnoses included major depressive disorder; anxiety disorder, unspecified; and amphetamine abuse. The four conditions combine to profoundly impair Ingram's ability to function in a work setting. He struggles to maintain regular hours, often sleeping from 4 a.m. to noon and he is unable to maintain the focus needed for employment. Dr. Reger noted that Ingram is highly distracted in their meetings and often no shows due to poor planning and distractibility. His social life is contracted, consisting of his parents and occasional girlfriends. Ingram had been briefly married but was unable to maintain the marriage and divorced. Dr. Reger said he would struggle to maintain normal social relationships in a work setting. He is currently "stable" but his baseline functioning is low. Dr. Reger stated Ingram would not be able to maintain employment of any type in the regular economy. If he was able to obtain a job, he would quickly lose it due to his impairments. In June 2018, a few months after Ingram's date last insured for benefits, Dr. Reger made the same assessment.

In June 2018, Dr. Humphrey indicated that Ingram had been a patient since February 6, 2018. He had a history of recurrent depression since childhood and through the years had had many antidepressants and mood stabilizers. He also has persistent inattentive attention deficit disorder. His symptoms have been persistent and impairing in his daily life. Ingram has a depressed mood, lack of energy, and trouble with motivation. His ADD symptoms of procrastination, inattention, and distractibility make work functioning difficult, even with treatment. Dr. Humphrey said that with the persistence of his symptoms, Ingram is unable to consistently function in any full-time work situation.

In June 2018, Ms. Bowers, Ingram's treating psychotherapist, indicated she had seen Ingram from February 3, 2009 until November 1, 2017, for a total of 89 appointments. They met

5

either bi-weekly or monthly, and she treated him for bipolar disorder, PTSD, ADHD, depression, anxiety, substance use disorder, and compulsive overeating. He presented having experienced extreme distress and problems with issues related to executive functioning (severe), adjusting to sober living and coping with relapse, difficulty maintaining healthy relationships, inability to work for anyone other than his father, coping with workplace stress, and anxiety. Additionally, Ingram intermittently experienced hypersomnolence disorder that contributed to his very poor executive functioning.

Ms. Bowers stated that Ingram has very supportive parents and once they stopped enabling him, he did much better maintaining abstinence from alcohol and other drugs. He was able to take responsibility for treating his substance use disorder and had a desire to do and be better in all areas of his life. Unfortunately, with the severity of his mental health issues and substance use disorder, she opined that it would always be an uphill battle [for him].

The ALJ gave the non-examining Agency record reviewers' opinions substantial weight. Ms. Bowers' opinion was given "some weight" because "[i]t is an opinion based in part of the claimant's self-reports of symptoms, and does not explicitly state how the claimant is functionally limited." (Tr. 21). The ALJ gave Dr. Reger's opinion "little weight." His only explanation was that it was "inconsistent with the evidence, which indicates that the claimant was doing well mentally at times." (*Id.*). Dr. Humphrey's opinion was rejected because it was "largely based on self-reports from the claimant, and final determinations of work ability are reserved for the [Commissioner]." (*Id.*).

As in the *Fox* case, the ALJ's cursory and conclusory analysis fails to provide a good reason for rejecting Dr. Reger's opinion. Moreover, the ALJ's statement that Ingram was doing

well "sometimes," disregards that he continued to struggle with anxiety, focus problems, and insomnia and that he continued to have substantial limitations at other times.

The ALJ largely rejected the opinions of Dr. Humphrey and Ms. Bower because they were either "largely based on self-reports" or "based in part" on Ingram's self-reports of symptoms. As the Seventh Circuit has noted, "a psychological assessment is by necessity based on the patient's report of symptoms and responses to questioning; there is no blood test for bipolar disorder." *Aurand v. Colvin*, 654 Fed. Appx. 831, 837 (7th Cir. 2016). There is no evidence to support the ALJ's intimation that Dr. Humphrey and Ms. Bower did not use professional judgment when making their assessments of Ingram's limitations. Ms. Bower particularly has treated Ingram for an extended amount of time, and there is nothing to suggest that either she, or Dr. Humphrey, did not take into account mental status testing, their observations of and interaction with Ingram over time, and their professional training in making their assessments. And given that psychological treatment is largely based on subjective reports, this is an insufficient reason to reject their opinions.

The ALJ did not evaluate Ms. Bower's statement that Ingram's intermittent hypersomnolence disorder contributes to his very poor executive functioning, or the effect of Ingram's severe executive functioning limitations. Executive functioning and self-regulation skills are the mental processes that enable us to plan, focus attention, remember instructions, and juggle multiple tasks successfully. The ALJ failed to evaluate the effect of Ingram's intermittent hypersomnolence or his impaired executive functioning, in fact, never mentioning either. Given Ms. Bower's long-term treating relationship with Ingram, and her assessment of interference in the ability to work due to his very poor executive functioning, the ALJ's rejection of her opinion is not supported by substantial evidence.

Further, the ALJ failed to evaluate the effect of limitations Dr. Humphrey assessed on Ingram's ability to work, including that Ingram has persistent inattentive attention deficit disorder with persistent symptoms, including procrastination, inattention, and distractibility. The ALJ rejected Dr. Humphrey's opinion because final determinations of work ability are reserved to the Commissioner. But the ALJ made no attempt to analyze the effect of Ingram's ADHD on his ability to perform work on a 'regular and continuing' basis of 8 hours a day for 5 days a week, or an equivalent schedule. The ALJ failed to assess whether Ingram would be able to adhere to a work schedule given his symptoms — an issue essential to determining Ingram's ability to work. The ALJ's reasons for rejecting Dr. Humphrey's opinion are not supported by substantial evidence.

Instead of discussing why he did not find Plaintiff's treating providers' opinions to be credible, the ALJ merely made one-sentence statements to justify his decision, without mentioning any of the factors listed in 20 C.F.R. §§ 404.1527(c). By performing such a "perfunctory" analysis, the ALJ failed to adequately explain the reason why he accorded less weight to these opinions. *See Lewis,* 858 F.3d at 867 (finding a "perfunctory" rejection of a treating physician's opinion inadequate when the ALJ's analysis spanned "only four lines" and overlooked "critical aspects" of the plaintiff's treatment history). And contrary to the Commissioner's argument, it is not the role of this Court to supply an explanation based on other findings in the ALJ's decision. This would lead the Court to impermissibly substitute its judgment for that of the ALJ. *See Radford v. Colvin*, 734 F.3d 288, 296 (4th Cir. 2013). Rather, the ALJ must explain with specificity his reasons for not giving the treating providers' opinions controlling weight.

Because the Court finds that the ALJ's rejection of the opinions of Plaintiff's treating providers is not supported by substantial evidence, the Court finds it unnecessary to address Plaintiff's second assignment of error.

## V. Conclusion

For the foregoing reasons, the Court is unable to find that the ALJ's decision is supported by substantial evidence. This case is remanded for the ALJ to reassess the opinion testimony of Drs. Reger and Humphrey and Ms. Bowers and to fully explain the rationale for the weight given to Plaintiff's treating mental health providers.

Accordingly, Plaintiff's Motion for Summary Judgment (Doc. No. 11) is **GRANTED**, the Commissioner's Motion for Summary Judgment (Doc. No. 13) is **DENIED**, and the decision of the Commissioner that Plaintiff was not disabled within the meaning of the Act is **VACATED AND REMANDED**.

**SO ORDERED**.

Signed: June 9, 2021

Graham C. Mullen
United States District Judge